United States Federal Court, Northern District of NY

County of Onondaga

---------------------------------------------------------------X

Kevin J Blair

                              Claimant

                 VS

Onondaga County
421 Montgomery St 10th Fl
Syracuse, NY 13202

Onondaga County DA William J. Fitzpatrick
505 South State St
Syracuse, NY 13202

Onondaga County CADA Dominic Trunfio
505 South State St
Syracuse, NY 13202

Onondaga County Assistant DA Michael Whalen
505 South State St
Syracuse, NY 13202

Onondaga County Sheriff's Department
407 South State Street
Syracuse, NY 13202

Town of Clay
3301 State Route 31
Clay, NY 13041

Town of Clay Justice Brian J. Lauri
3301 State Route 31
Clay, NY 13041

Robert S Baska Esq
441 South Salina St Suite 700
Syracuse, NY 13202

Assistant Attorney General Andrew J. Tarkowski
615 Erie Blvd W   Suite 201
Syracuse, NY 13204

M Jerald Harrel Esq
333 West Onondaga St
Syracuse, NY 13202

Andrea M. Ferro Esq
333 West Onondaga St
Syracuse, NY 13202

                                   Defendants

---------------------------------------------------------------X

Index # 5:18-cv-363 (GLS/ATB)

Date: _____



U.S. DISTRICT COURT - N.D. OF N.Y.
F I L E D
MAR 26 2018
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

**COMPLAINT**

To the Federal Court of the Northern District of the State of New York

There is a separate litigation filed between the Claimant and two Defendants in this action filed in 5th District Supreme Court, County of Onondaga, Docket ID 028021120008, but there is no other cause or litigation between the Claimant and the other listed Defendants in front of this Court or any other Court.

The above stated Claimant, Kevin J Blair, appearing Pro se if and until a time when he may be

assisted by legal counsel and under the tenants of Title 18, US Code § 242 respectfully requests

the court to award monetary and punitive damages in the maximum amount allowed by law for

violations of US Code § 1983  and of the Claimant's Sixth Ammendment Right to a Fair Trial, US

Code § 1985 Conspiracy, a violation of his 14th Ammendment Right to Due Process, a violation

of the Doctrine of Prosecutorial Vindictiveness, Abuse of Power, Abuse of Process, and

Malicious Prosecution committed against him by the above named Defendants and in support

thereof states the following:

### Jurisdiction, Venue, and Claims

1.      The Claimant herein, Kevin J Blair, is a resident of New York State residing at 1740 State
Route 48 Fulton NY, 13069.

2.      The Defendants herein named are each individually employed and residents in/of New
York State.

3.      Pursuant to Article III of the United States Constitution and the Judiciary Act of 1789 the
The US District Court Northern District of New York is an appropriate venue for the

commencement of this action as each party named herein resides in and is employed in the Northern District of New York State.

4.      On Feb 22, 2011 the Onondaga County Sheriff's Dept. began a campaign of collusion and defamation against the Claimant when they showed a blind bias in favor of the female "complainant" of an erroneous report of Domestic Violence against him. With the filing of this report, the Onondaga County Sheriff's Dept. began a three year long effort to intentionally and repeatedly report and label the Claimant as a Domestic Abuser, even when the facts and circumstances warranted differently. As it became clear that the Claimant's accuser was utilizing a pattern of false reports to destroy the Claimant's career and life, the Onondaga County Sheriff's Dept. realized that they had been facilitating her in that cause. Yet instead of correcting their path and admitting their wrongs, they continued to promote false reports and false accusations in an effort to protect themselves from future litigation such as this pleading.

5.      These numerous factually unsupported reports as reported by this agency ultimately led to the Onondaga Sheriff's Dept. engaging in an unprecedented biased effort to collude and conspire with the Onondaga District Attorney's Office to provide false information and false testimony in an effort to destroy the reputation of the Claimant and ultimately garner his conviction in a criminal trial. Key potentially exhonerating evidence utilized by the District Attorney's Office is alleged to have been "lost" in what the Onondaga County Sheriff's Dept. described as a "catastrophic computer failure". No law enforcement agency operating with integrity and morality could possibly engage and participate in such and extensive smear campaign of one individual and mysteriously lose potentially key evidence without malice and intent to satisfy an over zealous and revengeful District Attorney.

* Note: This is item 1 of evidenciary material "lost" or "unrecorded".

6. On Jun 25, 2011, after years as a victim of Domestic Abuse and weeks of psychotherapy, the Claimant once again was the VICTIM of Domestic Violence at the hands of his accuser and contacted 911 to report the incident. The Onondaga County Sheriff's Dept. again responded and immediately took sides with the female party who had contacted 911 almost ten minutes after the Claimant. The Onondaga County Sheriff's Dept. once again intentionally and erroneously showed unprofessional and intentional indifference that the Claimant had been the initial caller, took a completely false and non sensical affidavit from the female party, and completed a police report failing to even mention that the Claimant had been the original reporting victim. That report once again labeled the Claimant as the suspect and Domestic Abuser.

7. A competent, unbiased, and professional investigation void of the intent to disparage the Claimant would have sensically concluded that a then 17 year veteran decorated Police Sergeant couldn't strike a female in the right side of her face while he was driving and she was the passenger, and even if he had the ability and did so, wouldn't then call the police on himself to report it. Nor would he strike that female after he himself had called the police and knew that they were on their way. That malicious report by the Onondaga County Sheriff's Dept. solidified the Claimant's accuser's power to continually utilize their agency as a means to repeatedly victimize the Claimant with impunity and with the protection of the Onondaga County Sheriff's Dept..

8. On Jun 10, 2012 the Onondaga County Sheriff's Dept. responded to yet another false report by the Claimant's then girlfriend and once again with zero evidence corroborating her

version of events refused to conduct an actual investigation, subsequently arresting the Claimant for Assault 3rd Degree. The false story and circumstances of the incident did not even substantiate such a charge and showed the intent of the Onondaga County Sheriff's Dept. to trump up charges against the Claimant in their efforts to disparage him and destroy his career.

9.      The Onondaga County Sheriff's Dept. refused to utilize an open mind and clear view of the Claimant's accuser's Motive to Fabricate this story as only weeks earlier it had come to light that the Claimant's infant son had been molested by his accuser's older son and the Claimant had moved out with the intent to file for custody of his child.

10.      The erroneous and non factual affidavit obtained from the Claimant's accuser and used as a basis for his arrest was never substantiated by facts and or witnesses to the event in question and was the only basis for the Accusatory Instrument filed against him.  In a future call by the Claimant's accuser on July 27, 2012 she specifically requested that the arresting Deputy in this case, who inexplicably volunteered via radio transmission to handle this report for her, be summoned by the onscene Deputy so she could talk to him.

11.      The subsequent unjustified arrest caused the Claimant's photograph and personal life to be  displayed on local media outlets (Television, Radio, and Newspaper) as a "Domestic Abuser". This act caused the Claimant to suffer increased pressure and further ridicule at his place of employment, in the eyes of the community, and to members of Law Enforcement.

12.      As a result of the above arrest, with no information other than a she said / he said report, Town of Clay Court Judge Brian Lauri, a former employee of District Attorney William Fitzpatrick,  arraigned the Claimant and issued a Class A Full Stay Away Order of Protection in favor of the Claimant's Accuser.  Although lawful by legal definition, the unwarranted action by

the Court caused unduly harsh and excessive repercussions on the Claimant's ability to work as a Police Officer and carry a weapon. Without due process this Order of Protection was not issued to "protect" the Claimant's accuser, it was utilized as a sword of punishment by a Judge whose obsession and abuse of power motivated him to cast a preemptive judgement of guilt on the Claimant without ANY substantive evidence to support it.

**13.**     At the time of this arrest District Attorney William Fitzpatrick was in a heated public battle with the Claimant's employer, the Syracuse Police Dept.. DA Fitzpatrick had "Declared War" against the Syracuse Police because the Syracuse Police Department would not be bullied by his scare tactics. Several different fronts of this war were ongoing and when the Claimant was arrested DA Fitzpatrick set his sights on him as a means to embarrass the SPD and disparage the Police. Through his then attorney Robert Durr Esq, DA Fitzpatrick repeatedly tried to bully the Claimant into a plea deal requiring him to untruthfully "confess" to striking a female, an act he never committed. DA Fitzpatrick and his underling CADA Dominic Trunfio attempted to utilize their long standing Abuse of Power and Abuse of Process in Onondaga County to pressure the Claimant into a position that benefited their public feud with the Syracuse Police Dept. but was completely not true. This refusal by the Claimant to cower down was the only fuel required for the District Attorney's Office to conspire with local courts and attorney's to begin an unlawful campaign of destruction against the Claimant.

**14.**     On July 10, 2012 Judge Brian Lauri, in an unlawful and deliberate act of collusion and ex parte communication, allowed the Claimant's accuser to appear in his Court without the Claimant's or his attorney's knowledge. (The issue of whether or not she was with her attorney is still in question, as under oath in a later court appearance Judge Lauri claimed she was, but she herself claimed she wasn't.) The basic prinicible of court procedings disallowing one party

in a proceding to interact with the Court or other Officer of the Court without notice to the opposing party is lawyer basics 101. The fact that Judge Lauri allowed such an interaction in his Courtroom is itself indicative of his effort to subvert the legal system and manipulate the Claimant's due process, but his mysterious failure to even record that interaction in the same manner as all other interactions in the Court shows his intent to hide potentially exhonerating material from the Claimant and his attorney.

　* Note: This is the 2nd item of evidenciary material "lost" or "not recorded".

**13.**　Later testimony appears to reveal that the Claimant's accuser was in Court that evening attempting to retract in part or all of her allegation that the Claimant struck her on June 10, 2012 and was trying to convince Judge Lauri to drop the Order of Protection. Judge Lauri, in another overt act of prejudice against the Claimant, refused to do so, agreeing to only ammend the Order of Protection to ease the exchange of custody/visitation of Claimant and his accuser's mutual child. This Brady material / interaction has never been provided to the Claimant and as previously stated Judge Lauri "forgot to record it".

**14.**　As testified and proven in later testimony, Judge Lauri subsequently utilized a court clerk to alter, forge, copy and submit into the New York State Police Information Network an unlawful version of the Order of Protection that was never served upon the Claimant and in fact he was never made aware of by the Court. The expiration date, issue date, and other pertininent information was all unlawfully altered due to the fact that it's original version was insufficient on it's face and not lawfully enforceable.

**15.**　On Jul 27, 2012 the Claimant was once again the victim of an erroneous report to the Onondaga County Sheriff's Dept that the Claimant was unlawfully at her residence in Violation

of an Order of Protection causing the Claimant to be arrested, spend a night in jail, and subsequently be suspended without pay from his place of employment.

16.     Again the Onondaga County Sheriff's Dept. took a biased negative stance toward the Claimant and refused to conduct an actual investigation into the incident, instead coercing and threatening the Claimant's accuser into giving a non factual and knowingly false affidavit as a basis to arrest him.  That arrest led to the Claimant being encarcerated one night at the Onondaga County Justice Center violating his Constitutional Rights to Liberty and Freedom.

17.     On August 3, 2012 the Claimant's accuser penned a hand written letter to Judge Lauri which directly contradicted the version of events as reported in her affidavit given to the Onondaga County Sheriff's Dept. on July 27, 2012.  Judge Lauri documented that he sent copies of this Brady material to both the Claimant's then attorney Robert Durr and ADA Andrew Tarkowski, but mysteriously this letter never appeared in any court proceding and only came to light when the Claimant began his own investigation and effort to collect evidence for his appeal in April 2016.

18.     In an overt act of collusion and conspiracy to pervert the Claimant's Right to a Fair Trial and Right to Brady material, neither former ADA Tarkowski or the Claimant's former attorney Robert Durr Esq will respond to correspondence sent in the years following the 2015 trial requesting whether or not they had been given this letter by Judge Lauri.  The Claimant contends that the document was clear and concrete evidence that the July 27, 2012 arrest was based on false information given by his accuser and that it's relevance would have changed the outcome of his later trial for VOOP, but the collusion and conspiracy to hide the truth continues even to the date of this pleading.  Any answer to the Claimant's inquiry points one way or the

other to collusion and conspiracy on the part of one of more of these members of the "Legal"
system.

**19.** On Jan 8, 2013 the Claimant's then accuser contacted him relaying that she had
recorded a meeting between herself and ADA Tarkowski earlier that day and wanted the
Claimant to listen to it. On that recording ADA Tarkowski was heard opening some type of
book (Penal Law) and reading to her verbatim the section for Perjury. In no uncertain terms
ADA Tarkowski told the Claimant's accuser that he would arrest her and put her in jail if she in
anyway altered the original fabricated story that the Claimant had intentionally struck her on
Jun 10, 2012. Fully aware that the Claimant's accuser had altered her story on several occasions
and was an unreliable witness/victim, ADA Tarkowski, under the threat of incarceration, forced
the accuser to testify falsely. ADA Tarkowski also intentionally and deliberately withheld the
information that the accuser had repeatedly changed her version of events from the Claimant's
attorney in a complete violation of law and rules of evidence.

**20.** On Jan 9, 2013 the Claimant confronted his then attorney Robert Durr Esq and provided
him with the above information. Once inside the Courthouse, Durr, Tarkowski, and Judge Lauri
had some type of private/secret meeting in the Judge's Chambers that there is no record off ,
but after emerging from that meeting Mr. Durr advised me that Judge Lauri was not going to be
impartial in any prosecution of the Claimant and that we would need to request a Jury instead
of a bench trial. The details of that meeting in chambers remain a secret as of the preparation
of this pleading as it's content were intentionally not recorded in the official court record.

&ast;Note: This is the 3rd item of evidenciary material "lost" or "unrecorded".

**21.** Later on Jan 9, 2013 the Claimant went to his accuser's residence with his brother to

return the common child from visitation. The defendant erroneously reported to the Onondaga County Sheriff's Dept. that the Claimant had remained in her neighborhood to surveil her residence for the purposes of damaging it, causing the Claimant to once again be labeled as a "Domestic Abuser" in the eyes of the community and members of Law Enforcement. Again the Onondaga County Sheriff's Dept. never contacted the Claimant to get his side of the story or to speak with his brother.

**22.** On Jan 8, 2013 the Claimant's accuser provided him with information detrimental to ADA Andrew Tarkowski, yet on Jan 9, after interacting with ADA Tarkowski in the courtroom, the Claimant's accuser immediately made yet another false accusation regarding him. This behavior is indicative the the District Attorney's Office was purposefully influencing and coercing the Claimant's accuser to continue with a pattern of false reports against him.

**23.** As an active Order of Protection was in effect at that time a valid complaint of such activity by the Claimant would be a mandatory Felony arrest in NY State, yet the reporting Deputy failed to even contact the Claimant regarding the accusation. Intellect dictates that the reporting officer did not believe the accusation was true or he would have mandatorily arrested the Claimant, yet once again he completed a NY State Domestic Violence incident report labeling the Claimant as a "suspect" of Domestic Violence.

**24.** On Feb 13, 2013 the Onondaga County Sheriff's Dept. responded to the address of the Claimant's accuser on a complaint from her that the Claimant slashed the tires of her vehicle in the driveway of her residence. Once again, as in numerous cases before and after, there was an active Order of Protection in place at the time of this false accusation. Any action by the Claimant in this regard believed truthful by the responding Deputy would be cause for a

mandatory Felony arrest in New York.

**25.** On this occasion the reporting Deputy contacted and met with the Claimant who with 100% clarity and accuracy provided evidence to the Deputy in the form of text msgs from the accuser PROVING that the fabricated story made up against him was untrue. Another report was prepared regarding the incident yet the report never mentioned the evidence of innocense provided by the Claimant. That Deputy, with full knowledge that the report against the Claimant was false, refused and failed to take any criminal action against the Claimant's accuser for filing yet another false report.

**26.** On Jul 1, 2013 the Claimant went on trial for the charge of Assault 3rd Deg in the Town of Clay Court of Judge Brian Lauri. Judge Lauri refused to allow the Claimant and his attorney to bring a key witness with intimate knowledge and insight of the case into court, although then ADA Andrew Tarkowski was allowed to perpetuate his false narrative of abuse by the Claimant with a witness who had zero knowledge of the facts of the case, zero knowledge of either of the involved parties, and no expertise to testify as proffered by ADA Tarkowski. Both Judge Lauri and ADA Tarkowski turned a blind ear to perjured testimony and in fact, ADA Tarkowski perpetuated false testimony from the Claimant's accuser while Judge Lauri admonished the Claimant's Attorney Robert Durr Esq for objecting to it.

**27.** The Claimant's accuser repeatedly perjured herself under oath and was left unafraid of any consequences of this behavior, promoting her continuance of such action in the future under the umbrella of safety from prosecution afforded her by the District Attorney's Office and Judge Lauri.

**28.** The reporting member of the Onondaga County Sheriff's Dept. intentionally and

purposefully perjured himself under oath with impunity as he testified in the Claimant's Assault

trial. That Deputy's testimony was clearly and concisely proven in the trial to be false and yet

Town of Clay Court Judge Brian Lauri failed to admonish and/or punish that Deputy for his crime

of Perjury.

**29.**     As the history of the relationship and the molestation of the Claimant's son were

examined in their totality by the Jury, the Claimant was found NOT GUILTY of the crime of

Assault on July 2, 2013. With the not guilty verdict in hand District Attorney William Fitzpatrick

and CADA Dominic Trunfio, angered that their previous attempts to bully the Claimant did not

work, set out on a two year course of action to garner a conviction of the Claimant for the two

counts of VOOP that in any other court, with any other Defendant, would have been

immediately dropped. Those charges had no other mitigating crimes or circumstances other

than accusations that the Claimant was "there" when he shouldn't have been. DA Fitzpatrick

and CADA Trunfio began a systematic pattern of collusion, conspiracy, abuse of process, abuse

of power, malicious prosecution, and prosecutorial vindictiveness as they intentionally violated

the Claimant's Right to a Fair Trial by hiding and otherwise burying the molestation of the

Claimant's son and pressuring various members of the legal system, including District Attorney's

Office Employees and the Courts, to assist in the destruction of the Claimant's life.

**30.**     The District Attorney's Office began a smear campaign against the Claimant and started

a narrative that his son had not been molested, but that the Claimant was a serial domestic

abuser who was making the whole story up in his attempt to get out of trouble.

**31.**     The District Attorney's Office unlawfully, and in an act of complete abuse of power,

ordered the Onondaga County Sheriff's Dept. to "seal" any and all police reports involving the

Claimant so that he could not collect and utilize them to defend himself and/or expose his accuser as a liar. This act was aided by the Onondaga County Sheriff's Dept. who willfully sealed those records without proper authority to do so. Only when Town of Cicero Court Judge David Bruffet intervened in 2014 was the Claimant finally given access to those reports. This act by the District Attorney's Office is a patent violation of his Right to a Fair Trial and clear violation of the Claimant's right to obtain such documents and defend himself.

32.     Judge Lauri immediately began his resistance and sometimes outright refusal to provide copies of court transcripts, including the recently concluded trial, exhibits, and other court documents that the Claimant was legally and properly requesting to defend himself in the next round of court appearances/trial regarding the VOOP charges.

33.     On Jul 15, 2013 the Onondaga County Sheriff's Dept. documented another false report that the Claimant unlawfully violated an Order of Protection by sending his accuser a harassing text message. Of course, any such action from the Claimant believed truthful by the responding Deputy would have been cause for a mandatory Felony arrest and yet again, the Onondaga County Sheriff's Dept. refused to document the events accurately and again refused to take any action against the Claimant's then ex girlfriend's false report.

34.     Had the Onondaga County Sheriff's Office contacted the Claimant regarding this incident he would have readily proven that his accuser had herself traveled to his home town in Fulton, NY and attempted to engage in a manipulative conversation with him which he rejected. It was not the Claimant "harassing" the accuser, it was in fact the accuser harassing the Claimant. This incident was personally witnessed by numerous individuals.

35.     On Aug 5, 2013 the Onondaga County Sheriff's Dept. took another false and fabricated

report that the Claimant placed his hands on his ex girlfriend's throat and attempted to choke her in a local park. Once again an active Order of Protection was in place and any such action believed truthful by the Claimant would be cause for a Felony arrest. The Onondaga County Sheriff's Dept. showed their complete and intentional bias against the Claimant when they completed another report labeling him as a Domestic Abuser without even contacting him or conducting an investigation. Had they conducted an investigation the Onondaga County Sheriff's Dept. would have quickly determined that the Claimant could have provided substantial evidence, including an eye witness, proving that his accuser's allegation was completely fictitious. In fact, the Claimant was never even in the park with his accuser on the day in question and could have easily proven such.

**36.**     With a pending VOOP trial date of April 24, 2014, on April 4th of that same year, after four months of no active Order or Protection and zero substantiated incidents between the Claimant and his initial accuser, ADA Andrew Tarkowski utilized the above listed false reports to request Judge Bruffet issue yet another Order of Protection in favor of the accuser. This effort by ADA Tarkowski was a calculated, intentional, and unethical attempt to promulgate the narrative of abuse by the Claimant that an active Order was in place at the time of his trial. An unethical tactic to be used in the upcoming trial evincing the District Attorney's Office's vindictive effort to violate the Claimant's Constitutional Right to a Fair Trial.

**37.**     To Judge Bruffet's credit and wisdom he saw through Mr. Tarkowski's attempt to use the Court to supply another unjustified Order of Protection to bolster his upcoming case against the Claimant and denied the request. The trial was later delayed and delayed until Mar 23, 2015.

**38.** On May 8, 2014 the Claimant, represented by Atty Terry Kirwin Esq, testified as part of a Family Court Custody Petition which had finally made it to trial. The Claimant's accuser's attorney Andrea Ferro Esq. on opportunity to cross exam the Claimant, made overt conspiratory attempts to solicit information solely regarding the Claimant's criminal trial. Mrs. Ferro's questioning and attempts to garner testimony that would be later useful to the District Attorney's Office was so unrelated to the custody of his child that it readily exposed itself as an effort on her part to conspire with the District Attorney's Office in the Claimant's criminal prosecution. Excerpts from that proceding were ultimately utilized by ADA Michael Whalen as a tool to attack him in the subsequent VOOP trial.

**39.** On Feb 4, 2015 the Defendant falsely reported to the Onondaga County Sheriff's Dept that the Claimant had sent her "harassing" text messages. This report, although completely false, was again taken as gospel by the Onondaga County Sheriff's Dept. and fodder for them to intentionally file another report labeling the Claimant as a Domestic Abuser. Any contact with the Claimant would have once again readily revealed that he had clear and concise evidence that this report was false.

**40.** After a year in which there was no active Order of Protection and zero substantiated claims of any unlawful behavior on the part of the Claimant, ADA Michael Whalen used the above described false report, abuse of process, and abuse of power to solicit another Order of Protection from Town of Cicero Court Judge Douglas DeMarche'. This act was no more than an intentional effort of malicious prosecution parralleling ADA Tarkowski's earlier effort prior to the previous impending April 2014 trial, by the District Attorney's Office to bolster a Misdemeanor case against the Claimant and had zero legitimate cause to warrant it's issuance. This tactic, as was the previous attempt by ADA Tarkowski, was to simply be able to utilize it's

ussuance at trial to disparage the Claimant and give a false narrative that the Claimant was abusive.

**41.** On Mar 23, 2015 members of the Onondaga County Sheriff's Dept. perjured themselves at the Claimant's Violation of Order of Protection (VOOP) trial under the guidance of Assistant District Attorney Michael Whalen. The false testimony, cerainly taken as credible by members of the Jury, assisted the District Attorney's Office in their garnering a conviction of the Claimant and subsequent permanent termination of his employment as a Police Officer.

**42.** The Claimant's court assigned primary attorney Jerald Harrel Esq. simply chose not to attend the Claimant's trial as an overt act of conspiracy and collusion with the District Attorney's Office, thus completely perverting the Claimant's Right to a Fair Trial and representation. His previous request to be recused for medical reasons was denied and court records clearly indicate that he was to zealously represent the Claimant.

**43.** The Claimant's "back up" attorney Robert S Baska Esq. completely refused to properly defend the Claimant and in fact lied in open court offering to the Jury facts that were manufactured and untrue, yet aligned with the narrative of ADA Michael Whalen's prosecution. Mr. Baska repeatedly refused requests and demands from the Claimant that he produce and utilize stacks of evidence provided to him for a proper and zealous defense. He refused to correct, combat, and refute false testimony, and instead overtly aligned himself with ADA Whalen throughout the trial to secure the Claimant's conviction. Robert Baska continuously and intentionally failed to object to ADA Whalen's ongoing strategy of interjecting his own testimony and manipulative input into the trial, simply allowing ADA Whalen to design his own false narrative for the Jury to follow.

**44.**     Robert Baska Esq. allowed the District Attorney's Office to repeatedly trick the Jury and manipulate witnesses to testify in a manner detrimental to the Claimant. Mr. Baska refused to ask appropriate follow up questions, refused to object to inappropriate questioning by the ADA Michael Whalen, and allowed ADA Whalen to completely lie and act in a manner completely against the Rules of Law, Rules of the Court, and the oath he took as an attorney.

**45.**     With a history of immoral, illegal, and unethical behavior in his past career as a Medical Doctor and Surgeon, the State of Georgia Bar refused to allow Mr. Baska to practice law in their state. It is without question that an individual of such low character is not beyond voluntarily conspiring with the District Attorney's Office in the garnering of a conviction of his own client, or certainly not beyond being subject to pressure to do so by the District Attorney. In either case, Robert S Baska had a duty to zealously defend the Claimant and uphold his Right to a Fair Trial as offered in the United States Constitution yet he purposefully and overtly failed to do so on numerous occasions.

**46.**     ADA Michael Whalen repeatedly failed to follow general rules of litigation, lied, purported that truthful witnesses were liars, purported false witness testimony as truthful, and otherwise manipulated the Jury into having a false sense that the Claimant was guilty of these violations.  Throughout the trial ADA Whalen repeatedly and unethically told the Courtroom that there was no legitimate defense for Violating an Order of Protection, although in a previous court hearing Judge Demarche' clearly opened the possibility that a Justification Defense could be heard. The Claimant contends that if there truly was no defensefor him in this case, why is he afforded a trial in the first place?   ADA Whalen intentionally pounded false information into the Jurors heads that was not factually true, yet by abusing his position of

power he manipulated the Jurors into believing that he as an Officer of the Court wouldn't lie.

**47.**     ADA Michael Whalen unethically, maliciously, and intentionally attempted to use only portions of previous Custody Trial testimony provided to him by Andrea Ferro Esq. that taken out of context would appear to indicate the Claimant had engaged in criminal behavior, but taken in their totality would in fact show just the opposite. This attempt to manipulate and manufacture evidence in search of a revenge driven conviction on behalf of the District Attorney William Fitzpatrick and CADA Dominic Trunfio is a clear attempt to pervert the Judicial Process and the Claimant's Right to a Fair and Impartial Trial.

**48.**     On Apr 25, 2015 the Onondaga Sheriff's Dept took another false and fabricated report from the Claimant's ex girlfriend that the Claimant intentionally mailed adult oriented magazines to her residence in an effort to harass her, yet again another accusation of Felony behavior by the Claimant as an Order of Protection was in effect.

**49.**     The Sheriff's Deputy in this case did conduct a valid investigation which revealed and proved that the Claimant was not the cause of the mailings, but in fact the mailings were the product of his accuser's 15 year old son, yet that Deputy refused, failed, or was instructed not to take any action against the Claimant's ex girlfriend although the evidence proved she had filed another false police report.

**50.**     On Jun 4, 2015 District Attorney Michael Whalen requested the Claimant be incarcerated in a local jail for a period of 2 years. This request to incarcerate a lifetime exemplary citizen, whose majority of adult life was spent in the service of his country and community without incident, for 2 years in state prison for Misdemeanor convictions of Violations of Orders of Protection, based on an underlying charge he was found Not Guilty of, is

inherently sufficient evidence to show the vindictiveness of the prosecution against him because he would not accede to the District Attorney's demands and could not be bullied into submission.

51. Judge Douglas DeMarche' refused that request and sentenced the Claimant to three years of probation, but keenly aware that the Claimant's Union Contract with the City of Syracuse did not mean automatic termination of his employment based on a Misdemeanor conviction, ADA Whalen then requested that the Claimant's former accuser be awarded a five year stay away Order of Protection because he knew that this Order of Protection would prohibit the Claimant from possessing or carrying a firearm. At the time of this sentencing, after two years of being told Judge Lauri had taken his former girlfriend's place as the District Attorney's "victim", and after two years of zero substantiated reports or arrests of any kind, Judge Demarche' agreed to issue that Order of Protection effectively ruining the Claimant's career and life as a Police Officer. Evidence that one way or another a vindictive District Attorney's Office was going to force the Claimant out of his job with the Syracuse Police Dept..

52. The Claimant's attorney Robert Baska had been in possession of the Probation Dept's presentence report for several weeks and never contacted the Claimant to discuss it's contents, nor did he advise the Claimant that any potential "rules" to a sentence of Probation could be argued. Robert Baska discussed the terms of probation with the Claimant and had him sign that Probation "agreement" under the complete guise that these rules were etched in stone.

53. Subsequent to that sentencing the Claimant hired the Law Firm of Peter Skivington in Geneseo NY to take on his appeal and this Claim. After months of work on the appeal and allegedly preparing for the lawsuit, Atty Daniel Magill began refusing to take the Claimant's calls

and/or updating him on progress etc.. When the Claimant finally traveled personally to Geneseo
to inquire what was going on, Atty Magill revealed stories and comments indicating the the Firm
and it's boss had been scared off of the lawsuit via sometime of direct or indirect act committed
by District Attorney William Fitzpatrick. In that regard the Law Firm of Peter Skivington had not
begun the lawsuit documentation as had previously been agreed upon.

**54.**     Throughout 2015 and 2016 the Plaintiff conducted his own investigation and collection
of evidenciary material to support and appeal and this Pleading. This attempt to exhonerate
himself was in general met with little resistance except from the Town of Clay Court and Judge
Brian Lauri. Judge Lauri repeatedly ignored or flat out refused to provide transcripts and other
court materials legally available to the Claimant. On Oct 4, 2016, as part of a long standing and
repeated effort to obtain the transcipt from the July 2013 Assault trial, went into the Town of
Clay Court so that this request was "on the record". During that court appearance Judge Lauri
stated in clear language that he had one week before an upcoming two week vacation and if
not prior to, would have the audio recording of the trial prepared as soon as he returned and
sent out for transciption.

**55.**     After not receiving the transcript the Claimant returned to the Town of Clay Court on
Jan 25, 2018 and once again questioned where the transcript was. On the record Judge Lauri
implied that he didn't know exactly what I was looking or and why I needed it. The Claimant is
aware of no legally justified reason why a Judge has to know the "reason" why he's requesting
the transcript. The LAW is clear that any citizen has a legal right to a transcipt of his own court
appearance, the reason is irrelevant. The Abuse of Power and Process of Judge Lauri is beyond
insulting and evinces his absolute belief that he is above the laws of NY State and the US

Constitution.

**56.**     After advising Judge Lauri that I would be using the requested transcript in this pleading,

he refused to provide it to me. Judge Lauri then unlawfully ordered the Town of Clay Court

employees to disregard my requests and not talk to me if I came into the building. These

Officers of the Court are legally bound to also uphold the Laws of New York and the

Constitution of the United States, and as did Judge Lauri, took an oath to do so. Judge Lauri had

no legal basis to deny my request or to advise other public employees to break the laws they

took an oath to uphold.

**57.**     On Feb 16, 2017 the Claimant was in front of the Hon. SCJ Thomas Murphy regarding

different litigation when Judge Murphy stated that he was aware of the ongoing struggle the

Claimant was having with Judge Lauri over this transcript. Only after that interaction did SCJ

Murphy intervene and Judge Lauri was forced to give the Claimant the transcript he was legally

allowed to have.

**58.**     The Claimant then requested the transcripts of both the Oct 4, 2016 court appearance

and the Jan 24, 2017 court appearance. Upon receipt of the January transcript the Claimant

inquired as to where the Oct 4, 2016 transcript was, as this transcript was clear proof that while

behind the bench in his official capacity as Judge, Judge Lauri openly lied to the Claimant.

**59.**     Weeks later the Claimant received a letter from Judge Lauri stating that the Oct 4, 2016

court recording/transcipt was forever lost due to a "fatal computer error" which had occurred

in the Courts recording laptop.

        *Note:  This is the 4th item of evidenciary material "lost" or "unrecorded".

**60.**     The Defendant's combined actions caused the Claimant to suffer irreparable personal

and public humiliation, as well as severe financial harm in the form of lawyers fees, vehicle

repossession, loan default, child support arrears, and creditor collections totalling close to $70,000.00 .

**61.**    The Defendant's combined actions led to the Claimant being unable to find gainful employment in his chosen field and hindered his ability to find any employment during the time frame of July 2012-June2015, as he had technically been still employed with his previous employer for three years where his average annual earnings reached $95,000.00 .

**62.**    The Defendant's actions ultimately led the Claimant to be fired from his place of employment, and the potential loss of a lifetime pension of approximately $50,000.00 a year with medical insurance, and to the Claimant being sentenced to three years of probation restricting several basic American liberties and freedoms.

**63.**    The Defendant's committed the above acts as part of a conspiratory smear campaign designed to cover up for the molestation of his son and thus garner an unjustified conviction for two Misdemeanor arrests. Their colluded abused of power and process were facility and manipulated by a vindictive District Attorney who's history is to bully citizens of the State of New York into submission.

Based on the above listed claims the Claimant respectfully requests the Court allow this pleading to lawfully progress through the Civil Process in it's entirety without the hinderence of inpropriety or bias. The Claimant respectfully requests that should this case procede to a conclusion via trial, that the Court assign a Jury to decide it's fate.

Wherefore the Petitioner/Claimant respectfully requests the Court to enter a judgement against the Defendant providing the following relief:

(a)  Compensatory damages with a minimum value of $20,000,000.00, exclusive of costs and interest, that the Claimant is found to be entitled.

(b)  Punitive/exemplary damages against the Defendant in whatever amount, exclusive of costs and interest, that the Claimant is found to be entitled.

(c)  An order enjoining/restraining the Defendant from additional accusations and/or retaliatory behavior as an effort to thwart this action and any future efforts by the Claimant to gain remedy.

(d)  A protective order restraining the Defendants from the destruction or deletion of any other evidence in the case, or abusing their power and authority to threaten, intimidate, and/or otherwise interfere with any potential witness in this Complaint.

(e)  An injunction restraining the Defendants from unlawfully surveilling or further interfering with the Claimant's personal liberties including bank accounts, phone bills, internet provider, etc., by means of personally motivated subpoenas not expressly approved by the court.

(f)  Any other and further relief as the Court deems appropriate.


So submitted Pro Se by Claimant


X_____

Kevin J Blair
1740 State Route 48
Fulton, NY 13069
315-314-0179

City/County of _____
State of _____
Subscribed and sworn to before me
this _____ of _____, _____
by _____
_____ Notary Public
My commission expire _____